IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

ANASTACIO ALBARADO GOVEA, JR.,  }
TDCJ-CID NO.1274477,                          }
Plaintiff,                                              }
                                                            }          CIVIL ACTION NO. G-07-480
                                                            }
CHARLES JAMES, *et al.,*                    }
Defendants.                                         }

OPINION ON DISMISSAL

Plaintiff, an inmate incarcerated in the Texas Department of Criminal Justice -

Correctional Institutions Division ("TDCJ-CID"), filed a *pro se* complaint alleging violations of

his civil rights under 42 U.S.C. § 1983.  (Docket Entry No.1).  Defendants Major Charles James

("James") and Lt. Michael Morgan ("Morgan") have filed a motion for summary judgment.

(Docket Entry No.19).  Plaintiff did not file a response to the motion.  Service upon defendant

Correctional Officer Mark Brawn ("Brawn") has not been successful; therefore, Brawn has not

filed an answer or a dispositive motion in this case.

For the reasons to follow, the Court will grant defendant's motion for summary

judgment and dismiss plaintiff's complaint with prejudice.

I. BACKGROUND

Plaintiff alleges that the following events gave rise to the pending civil rights

complaint:

On December 5, 2006, plaintiff was released from solitary confinement, where he

had spent fifteen days as the result of a disciplinary violation.  (Docket Entry No.1, page 8).

Around 5:00 p.m., plaintiff obtained his bed linen and mattress.  Officer Brawn took plaintiff to

the barbershop to get a haircut.  (*Id.*).  As he waited for a haircut, plaintiff sat on a bench and

1

placed one foot on the bench in front of him.  (*Id.*).  Around 5:20 p.m. Major James passed through the sallyport and saw plaintiff with his foot on the bench.  James knocked on the window and signaled for plaintiff to remove his foot from the bench.  (*Id.*).  Plaintiff complied and waved at James to acknowledge his request.  (*Id.*).  James came back to the hallway and ordered Brawn to open the barbershop door.  (*Id.*).

When the door was opened, James ordered plaintiff out of the shop and directed him to stand against the wall in the hallway.  (*Id.*).  Plaintiff questioned James's actions and indicated that he had complied with James's request to remove his foot from the bench.  (*Id.*).  James cursed and told plaintiff that he does not make requests but gives orders.  (*Id.*).  James asked why plaintiff had waved him off with his hand.  (*Id.*).  Before plaintiff answered, James questioned plaintiff as if to provoke plaintiff to fight.  (*Id.*).  James ordered plaintiff back to his assigned housing but plaintiff indicated that he first needed to obtain his bed linen and mattress from the barbershop.  (*Id.*).  James refused and ordered plaintiff to the housing area.  (*Id.*).  Plaintiff tried to explain that his belongings were in the barbershop but James ordered him to the cellblock and threatened to lock plaintiff up again.  (*Id.*).  Plaintiff responded to the threat by telling James to either let him get his things or to lock him up.  (*Id.*).  James ordered plaintiff to turn around and place his hands behind his back for restraints.  (*Id.*).  Plaintiff complied and James taunted him with a derogatory remark.  (*Id.*).  Plaintiff turned around and cursed at James.  (*Id.*).

James then grabbed plaintiff by the neck with both hands and choked him; James pushed plaintiff against the wall and raised him off the ground.  (*Id.*, page 9).  Lt. Morgan and Officer Brawn ran to plaintiff's side and grabbed his hands and feet.  Plaintiff did not initially resist but as he began to feel that his life was in danger, he tried to pry James's hands open.  (*Id.*).

As he began to black-out, plaintiff hit James so that he would release him. (*Id.*). Officer Lasonja R. Cotest saw that James's conduct was getting out of hand and started to pull the officers off of plaintiff. (*Id.*). James released plaintiff and hit plaintiff's head and face with his fist. (*Id.*). Plaintiff tried to deflect the blows but James continued to hit him. (*Id.*). Morgan and Brawn cuffed plaintiff's hands behind his back as James continued to hit plaintiff on the head and face. (*Id.*). James then "kneed" plaintiff on his back and ribs as plaintiff lay on the floor. Officer Marshall retrieved the camcorder and filmed the parties as they cuffed and subdued plaintiff but he turned the camera off when James hit and kneed plaintiff. (*Id.*).

After James was pulled off plaintiff a second time, plaintiff was taken to the infirmary and given a minor physical. (*Id.*). Medical staff observed knots on plaintiff's head and handprints on his neck. (*Id.*). A building security officer took five photographs of plaintiff's face and neck and then transported him to the lock-up area. (*Id.*). Plaintiff was instructed to write a statement regarding the use of force by Major James. (*Id.*). The next morning, plaintiff was informed that he would be served with a disciplinary case for assaulting James. (*Id.*). After a hearing where Officer Cotest denied being in the area where the incident occurred, plaintiff was found guilty and placed in transient status. (*Id.*). While he was in lock-up, Officer Brawn confessed to plaintiff that he did not approve of the way James treated plaintiff but he could not state the same unless ordered by a court to do so. (*Id.*). Officer Marshall wrote exactly what happened but refused to come forward because he feared retaliation. (*Id.*).

Days later, plaintiff was taken to the infirmary, where Sr. Warden Mossberger told him that additional photographs of plaintiff's entire body were required to be filed with the use of force incident report. (*Id.*).

Plaintiff requests the Court to order that criminal charges be filed against defendants for their misconduct as guards.  (*Id.*, page 4).  He also requests the Court to overturn his disciplinary case and all reprimands from this incident.  (*Id*.).  He further seeks compensatory damages for pain, suffering, and emotional scarring.  (*Id*.).

Defendants Charles James and Michael Morgan move for summary judgment on grounds that plaintiff cannot overcome their entitlement to qualified and Eleventh Amendment immunity.  (Docket Entry No.19).  Defendants contend that plaintiff cannot recover damages for the use of excessive force because he did not suffer a physical injury.  (*Id.*).

## II. STANDARD OF REVIEW

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).  The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant.  *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

## III. DISCUSSION

The Civil Rights Act of 1866 creates a private right of action for redressing the violation of federal law by those acting under color of state law.  42 U.S.C. § 1983; *Migra v.*

4

*Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984).  Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights conferred elsewhere.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  To prevail on a section 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).   A section 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.  *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).  Thus for plaintiff to recover, he must show that the defendants deprived him a right guaranteed by the Constitution or the laws of the United States.  *See Daniels v. Williams*, 474 U.S. 327, 329-31 (1986).

## A. Disciplinary Sanctions

Plaintiff was convicted of a disciplinary violation of assaulting an officer without a weapon that resulted in no injuries.  (Docket Entries No.1, No.19-4, page 12).  He seeks an order directing TDCJ officials to overturn the conviction and to remove the sanctions associated with such conviction.  (*Id.*).  Other than solitary confinement and a transfer to another unit, the record does not reflect the sanctions suffered as a result of the conviction.

"[A] state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated."  *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)); *Clarke v. Stalder*, 154 F.3d 186 (5th Cir. 1998) (finding favorable ruling on request for injunctive relief would necessarily imply the invalidity of loss of good-time credits).  This principle applies not only when the prisoner challenges the judgment as a

5

substantive matter but also when he challenges "procedures . . . such as necessarily to imply the invalidity of the judgment." *Edwards*, 520 U.S. at 645.   A conviction for purposes of *Heck* includes a ruling in a prison disciplinary proceeding that results in a change to the prisoner's sentence, including the loss of good-time credits.   *Id.* at 641.   Plaintiff does not allege that the conviction has been reversed, expunged, set aside, or called into question, as *Heck* mandates.   To the extent that plaintiff lost good conduct credits from this conviction, a favorable judgment on plaintiff's request for injunctive relief would necessarily imply the invalidity of the disciplinary conviction; therefore, injunctive relief on his claims would be barred by *Heck*.

However, the requirement in *Heck* that a prisoner seek a favorable result in state litigation or federal habeas with respect to a disciplinary proceeding before seeking compensatory relief under § 1983 is not "implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence." *Muhammad v. Close*, 540 U.S. 749, 751 (2004).   Unlike the plaintiff in *Muhammad*, plaintiff does not seek compensatory damages from a wrongful conviction but asks this Court to expunge the disciplinary conviction from his record.   Therefore, regardless of the sanctions imposed, plaintiff's challenge to his disciplinary conviction is barred by *Heck*.  *See e.g. Charles v. Cockrell*, 202 Fed. Appx. 48 (5th Cir. 2006).

## B. Eleventh Amendment Immunity

Suits for damages against the state are barred by the Eleventh Amendment. *Kentucky v. Graham,* 473 U.S. 159, 169 (1985).   Under the Eleventh Amendment, an unconsenting state is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.  *Edelman v. Jordan,* 415 U.S. 651, 663 (1974).   Absent waiver, neither a state nor agencies acting under its control are subject to suit in federal court.  *Puerto*

6

*Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144 (1993).  This bar remains in effect when state officials are sued for damages in their official capacity.  *Cory v. White,* 457 U.S. 85, 89 (1982).

All defendants in this case are employees of the State of Texas or state agencies; therefore, plaintiff's claims seeking monetary damages against all defendants in their official capacities are barred by the Eleventh Amendment.  *See Will v. Michigan Dept of State Police*, 491 U.S. 58, 71 (1989) (suit not against official but state office); *Oliver v. Scott*, 276 F.3d 736, 742, 742 n. 5 (5th Cir. 2002).

### C. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity from suit on plaintiff's excessive force claim.  (Docket Entry No.19).  Defendants maintain that the summary judgment record shows that as a matter of law plaintiff's injuries were *de minimis* and that such injuries evince *de minimis* force.  (*Id.*).

Qualified immunity shields government officials performing discretionary functions "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."  *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  "Whether a defendant asserting qualified immunity may be personally liable turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law."  *Fraire v. City of Arlington*, 957 F.2d 1268, 1272 (5th Cir. 1992).

Prior to the United States Supreme Court's decision in *Pearson v. Callahan*, 129 S.Ct. 808, 2009 WL 128768 (2009), "[t]he threshold inquiry a court [was required to take] in a qualified immunity analysis [was] whether plaintiff's allegations, if true, establish[ed] a constitutional violation."  *Hope v. Pelzer*, 536 U.S. 730, 736 (2002).  "If no constitutional right

would have been violated were the allegations established, there [was] no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the allegations established a constitutional violation, the court next consider[ed] whether the defendants' actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope*, 536 U.S. at 739 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The *Pearson* Court, however, held that consideration of the issues in this sequence is no longer mandatory. 2009 WL 128768 at *9. This Court, however, finds that the traditional sequence is most applicable in this case.

When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002). Even so, on summary judgment, the court must look to the evidence before it in the light most favorable to the plaintiff when conducting a qualified immunity inquiry. *Id.* at 323.

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. *Hudson v. McMillian,* 503 U.S. 1, 5 (1992). To establish an excessive force claim, an inmate must show that the force was not applied "in a good faith effort to maintain or restore discipline," but rather was administered in a malicious and sadistic manner to cause harm. *Id.* at 8. The analysis of an excessive force claim includes an objective and a subjective component. Under the objective component, a court must determine whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Id.* quoting *Wilson v. Seiter*, 501 U.S. 294, 302 (1991). The objective component of the Eighth Amendment is "contextual"; whereas a conditions-of-confinement claim requires "extreme deprivations" to be cognizable, in the excessive-force context, "[w]hen prison officials

maliciously and sadistically use force to cause harm," the Eighth Amendment is violated "whether or not significant injury is evident." *Id.* at 9. Not every malevolent touch by a prison guard gives rise to a federal cause of action. *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986).

The Court first considers whether plaintiff has demonstrated the existence of a fact issue on whether defendants used force "in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. The subjective intent of the officer may be determined by considering the following objective factors: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible official; and (5) any efforts made to temper the severity of the forceful response. *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993). The court "may look to the seriousness of the injury to determine "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" *Brown v. Lippard*, 472 F.3d 384, 387 (5th Cir. 2006) (quoting *Whitley*, 475 U.S. at 321).

The undisputed record shows that the need for force was legitimate and the threat perceived by defendants James, Brawn, and Morgan was reasonable given plaintiff's non-compliance and aggressive acts. Plaintiff thrice refused Major James's orders to go to his cell block. (Docket Entries No.1, page 8; No.19-3, page 12). After the third refusal, James ordered

plaintiff to turn around and submit to hand restraints.  (*Id.*).  Plaintiff turned in compliance.  (*Id.*).  Before James applied the restraints, plaintiff turned abruptly to face James in an aggressive manner.  (*Id.*).  James then pushed plaintiff to the wall with his hands about plaintiff's shoulder and neck.  (Docket Entries No.1, page 9, No.19-3, page 13).  Officer Brawn and Lt. Morgan saw James struggling with plaintiff against the wall and rushed to help James put plaintiff on the ground.  (Docket Entries No.1, page 9; No.19-3, pages 15, 18).  Brawn restrained plaintiff's torso and Morgan pulled plaintiff's legs from beneath him.  (*Id.*).  Morgan gave Brawn hand restraints to place on plaintiff.  (Docket Entry No.19-3, page 18).

Plaintiff and James do not dispute that plaintiff hit or attempted to hit James[1] while James held plaintiff against the wall and that James returned the blow to plaintiff's face.  (Docket Entries No.1, page 9, No.19-3, page 13).  Plaintiff claims he attempted to strike James because James was choking him and only after Morgan and Brawn intervened in the altercation.  (Docket Entry No.1, page 9).  James states in the Use of Force Report that he ordered plaintiff to submit to hand restraints as he held plaintiff against the wall but plaintiff struck him on the right temple with a closed fist.  (Docket Entry No.19-3, page 13).  James indicates that he struck plaintiff once on the left facial area.  (Docket Entry No.19-3, page 12).

Plaintiff, however, contends that after he was cuffed, James hit him again on the head and face and kneed him on the right side of his back ribs.  (*Id.*, page 9).  Plaintiff did not report that James beat him after he was cuffed in Step 1 Grievance No.200705955, which he filed on December 11, 2006.  In such grievance, plaintiff states that James slammed him to the ground and punched him on the head and kneed him on his back and side while Morgan held his legs and Brawn grabbed his arms.  (Docket Entry No.19-4, page 15).  Plaintiff states that "when

---

[1] James did not suffer a physical injury from plaintiff's strike to his face but lost his right contact lens.  (Docket Entry No.19-4, pages 8-9).  Plaintiff was found guilty of assaulting Major James with his fist.  (Docket Entry No.1).

James finally decide[ed] to stop hitting me, they then put the hand restraints on me [and] [took] me to the infirmary for a use of force physical." (*Id*.).

James states in the Use of Force Report that plaintiff continued to struggle once on the ground both before and after he was cuffed and that once plaintiff stopped struggling, James ordered that plaintiff be turned on his side. (Docket Entry No.19-3, page 13). None of the officers involved in the altercation, including James, reported striking plaintiff after he was cuffed. Plaintiff does not indicate in his original complaint whether he continued to struggle after he was cuffed and he did not attempt to contravene evidence of such struggle by filing a response to the motion for summary judgment.

Plaintiff suffered minor bruising to his neck. (Docket Entry No.19-4, page 3). Plaintiff sought medical treatment three days after the incident for difficulty swallowing. (Docket Entry No.19-5, page 4). The attending nurse noted no evidence of neck trauma and observed plaintiff sucking hard candy and talking with other offenders without difficulty. (*Id*.). Medical providers further found no evidence of neck trauma on December 18th. (*Id*.).

Plaintiff also suffered multiple abrasions to his head that were treated with a saline solution. (Docket Entry No.19-4, pages 3-4). He further suffered multiple bruises to his forehead and left eye and contusions to his face and head. (*Id*.). These injuries were classified as minor. (*Id*., page 3). Medical personnel did not note redness, swelling, or bruising to plaintiff's back, ribs, or side from the alleged "kneeing." Medical records show that plaintiff complained of headaches for three weeks after the altercation, but no acute distress was noted. The headaches were treated with ibuprofen. (Docket Entry No.19-5, pages 3, 6).

Plaintiff's injuries are consistent with those one might incur during a struggle with prison guards who were attempting to restrain and subdue an uncooperative and aggressive

inmate.  The injuries were classified by medical personnel as minor and treated with over-the-counter medication.  In this context, the Court finds that plaintiff suffered at least minor injuries that were more than *de minimis*.  While it is unfortunate that the situation escalated to the point that force was used and that plaintiff suffered such injuries from the use of force, the record reflects that in this situation, the use of such force could plausibly have been thought necessary. *See Clemmons v. Greggs*, 509 F.2d 1338, 1340 (5th Cir.1975) (noting use of force does not constitute cruel and unusual punishment when reasonably necessary to subdue a recalcitrant prisoner); *Williams v. Hoyt*, 556 F.2d 1336, 1339-40 (5th Cir.1977) (affirming jury verdict for the defendants where evidence was sufficient to show that mace was used only for the control of unruly prisoners and was, therefore, not excessive).

Because defendants did not violate plaintiff's constitutional rights, defendants are entitled to summary judgment on their qualified immunity claim.

<u>CONCLUSION</u>

Based on the forgoing, the Court ORDERS the following:

1. Defendant's motion for summary judgment (Docket Entry No.19) is GRANTED.  Plaintiff's request for injunctive relief and compensatory damages are DENIED.  All claims against all defendants are DISMISSED.

2. Plaintiff's complaint is DISMISSED WITH PREJUDICE.

3. All pending motions, if any, are DENIED.

SIGNED at Houston, Texas, this 26th day of March, 2009.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE